UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MALEEK JAMES, | CASE NO. C12-1917-MJP |
| Petitioner, | ORDER DENYING PETITION |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter comes before the Court on Maleek James's amended petition for habeas corpus relief under 28 U.S.C. §2255. (Dkt. 83.) Having reviewed the petition, the government's response (Dkt. No. 90), Mr. James's reply (Dkt. No. 93), and all related papers, the Court DENIES the Petition (Dkt. Nos. 1, 83).

**Background**

James's §2255 Petition stems from his criminal conviction and sentence in USA v. Hussain, et al., Case No. 2:09-cr-00427-RSM-3 (W.D. Wash. 2011). A jury convicted James of four crimes: (1) conspiracy to possess MDMA/ecstasy with intent to distribute; (2) possession of

MDMA/ecstasy with intent to distribute; (3) conspiracy to import MDMA/ecstasy; and (4) aiding and abetting the importation of MDMA/ecstasy.

A. Facts Relevant to the Petition

James's arrest and criminal prosecution resulted from a broader drug investigation by federal agents pertaining to a Canadian-based organization that allegedly smuggled MDMA/ecstasy, marijuana, and methamphetamine between Canada and the United States. (SER_57-58.)[1]

The Court limits recitation of the facts to those pertaining to James's claimed errors.

1. Voir dire

During voir dire, the government conducted the following colloquy:

> MS. BORICHEWSKI: Thank you. Now, ladies and gentlemen, you know a little bit about this case, not much, but I'll tell you at the front end, one of the things you're going to hear about is individuals – you'll hear testimony from individuals that have cooperated with law enforcement during this investigation. Probably one of the most famous cooperators of all time, Sammy "The Bull" Gravano. He was an informant who admittedly served five years in jail.
>
> MR. BENTLEY: I object to this colloquy.
>
> THE COURT: I think she's setting up a question for the jury.
>
> MS. BORICHEWSKI: He served five years in jail and testified against the highers up. He testified against the people who gave the orders, John Gotti. John Gotti ended up serving a life sentence for his crimes. Juror No. 2, what do you think about that circumstance and that deal, that Sammy "The Bull" Gravano killed 17 people and did five years in jail?
>
> JUROR NO. 2: I have no opinion.
>
> MS. BORICHEWSKI: Do you think that deal should have been made?

---

[1] "ER" refers to the record filed by Petitioner on his direct appeal before the Ninth Circuit Court of Appeals and "SER" refers to the supplemental excerpts filed by the government in that proceeding. See USA v. Maleek James, Case No. 11-30160.

JUROR NO. 2: If the litigants at hand felt like that was a fair solution, that's good enough for me.

MS. BORICHEWSKI: Juror No. 3, what do you think about that?

JUROR NO. 3: I don't think it's fair. There are 17 individuals murdered. Why did they – my understanding is that – I'm familiar watching crime shows and whatnot – there were 17 individuals murdered, and this individual did testify for a greater cause, but it still would bother me that they only got five years.

MS. BORICHEWSKI: Of course. Would it make a difference for you if it wasn't murder that the person who gave information to law enforcement was charged with?

JUROR NO. 3: I don't know. I think it would depend on the circumstances, because I think at the end of the day it would bother me.

MS. BORICHEWSKI: Thank you. Let me just ask, who has a similar mindset of Juror No. 3? Juror No. 20?

JUROR NO. 20: I think if you're going to do the crime, you do the time. I'm very adamant against – regardless of – the crime is not getting caught. The crime is doing the crime.

MS. BORICHEWSKI: Right. Thank you. Yes, Juror No. 23?

JUROR NO. 23: I don't have anything further to add, but I agree with both.

MS. BORICHEWSKI: Thank you. Does anyone have a different opinion or a different perspective on that person being used as an informant to target someone that gave the order for murder? Juror No. 5, what do you think about that?

JUROR NO. 5: I think it's kind of a standard way. It's kind of a trade-off. The example, five years for 17 murders, I don't think that's fair. On an individual level, in a bigger picture, it could be if it's resulting in bringing in more guilty people and more justice that way.

MS. BORICHEWSKI: Okay. Does anyone have a similar thought to Juror No. 5? Juror No. 45?

JUROR NO. 45: I think for the greater good. It doesn't seem fair, but for the greater good you have to make exceptions. If you're eliminating a larger organization, you may have to make some sacrifices. It doesn't seem right you can murder 17 people and get five years, but maybe to stop more murders.

ORDER DENYING PETITION- 3

1     MS. BORICHEWSKI: No. 41?
2     JUROR NO. 4: I agree.

3     MS. BORICHEWSKI: 35?

4     JUROR NO. 35: Five years was an accurate amount given, but it did solve the bigger purpose. I think he should have gotten more years, but I think still bigger...

6     JUROR NO. 36: I agree completely.

7     MS. BORICHEWSKI: 32?

8     JUROR NO. 32: I agree with them.

(ER_15-18.)  At trial, the government presented the testimony of several cooperating witnesses who had pled guilty as part of the same conspiracy.  (Dkt. No. 83 at 5-7.)  None, however, were charged with murder, and none testified to James ordering any murders.

2.  Telephone Recording

At trial, the government introduced a recording of a telephone call between Kim Farah and James taken while Farah was in custody at the Federal Detention Center at SeaTac, Washington, ("the FDC") on December 13, 2009.  Farah is James's sister-in-law, who was arrested in the months before James as part of this same alleged conspiracy.  After her initial appearance, Farah was held at the FDC where she was allowed to make personal phone calls. Farah signed a form acknowledging these personal calls would be monitored.  (SER_177-179.)

Farah called James on December 13, 2009.  At the start of the call, a prerecorded message told James: "You have a BAC collect call from Kim Farah an inmate at a federal prison. To hear the cost of the call press 8 now.  To accept this call press 5 now."  (SER_97.)  James accepted these charges.  The following conversation was recorded:

James: Hello.
Farah: Hi Bri…..
James: What happened?

```
           Farah: I'm so scared.
           James: Don't worry about it, you good Kimmie.  You good baby you good.
           Farah: Are you sure.
           James: Kim, we are positive. Baby Baby.
           Farah: [overlaps] scared.
           James: Baby baby Kimmie, you're coming home on Wednesday Kim.  We've
           got [unintelligible (u/i)] and
           Farah: How can this happen to me?
           James: Kim you know its just [stammer].
           Farah: How can this happen to me?
           James: Its nothing.  It's just cause we were being too greedy right now. Kim
           listen
           Farah: [interrupts] Not me.
           James: No. Us, me, everyone, we should've never even
           Farah: It wasn't me though.
           James: I know, but we didn't even need this though. We didn't need this
           money.  We didn't need nothin.
```

(SER_97-98.) James also asked Farah, "what…what…what happened? What was there? Was…How was the drugs in the car?" (SER_98.) Farah responded, "Don't say anything over the phone." (Id.) James then confirmed that "it wasn't on you, right?" (Id.)

James's counsel did not move to suppress the recording. Instead, he argued the jury should hear the recording in its entirety, for context. (ER_149.) The Government submitted a transcript from the entire call to the jury, but only a portion of the transcript was read aloud during trial. (ER_150.)

3. <u>Defendant's Decision Not to Testify</u>

James did not testify at trial. In an affidavit in support of his Petition, James explains his decision:

> On or around January 16th 2011, prior to the start if my trial, which began on February 15, 2011, I spoke with my attorney Allen Bentley during a visit session at the FDC Sea-Tac. During this time Mr. Bentley and I were going over the final plans before trial. Mr. Bentley asked me "if I was planning on testifying during my trial." I told him "yes." Mr. Bentley responded that he had previously spoken with the AUSA Lisca Borichewski, and she told him "that if Mr. James takes the stand at trial, she would impeach James with his 1999 Canadian Juvenile Prostitution conviction." Mr. Bentley went on to say "that this conviction could look really bad to the jury and may damage your

ORDER DENYING PETITION- 5

>
> chances of winning your trial." So at the sound legal advice of my attorney Allen Bentley I decided to decline the opportunity to take the stand on my behalf for fear of the jury's depiction [sic] of me if they were to receive this information of my 1919 [sic] conviction, as well as them viewing me as some type of sexual convict or worst [sic] a pediphile[sic]. This is the only reason I did not take the stand and testify on my own behalf at trial.

(Dkt. No. 83-1 at 20-21.)

B. Procedural Posture

Following a four-day trial, a jury returned a verdict of guilty on all of James's four charged offenses. (Case No. 2:09-cr-00427-RSM-3, Dkt. No. 275.) James was sentenced to 108 months in prison. (Case No. 2:09-cr-00427-RSM-3, Dkt. No. 354.) He appealed to the Ninth Circuit. The Ninth Circuit affirmed the conviction and sentence on September 12, 2012. United States v. James, 494 Fed. Appx. 745 (9th Cir. 2012).

In affirming the conviction, Judge Gould noted in a concurring opinion that he did so with "significant reservations," because "of what I consider an entirely improper jury voir dire conducted by the prosecutor." Id. at *748. Judge Gould explained the prosecutor's references to mob boss John Gotti and Sammy "The Bull" Gravano, were "incorrect and threatened the fairness of the trial." Id. But:

> While this voir dire is close to the line of what I would consider so inflammatory as to preclude a fair trial, I conclude that in this direct appeal James did not meet his burden of showing prejudice sufficient to satisfy the plain error standard. However, this voir dire and the absence of objection by James's counsel are a proper subject for an ineffective assistance of counsel claim in collateral proceedings under 28 U.S.C. § 2255.

Id.

**Discussion**

A. Legal Standard

This is a habeas petition under 28 U.S.C. § 2255. Under section 2255 a court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration on

1  the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the
2  United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence
3  was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to
4  collateral attack.  28 U.S.C. § 2255(a).  A movant must allege specific facts that, if true, entitle
5  the movant to relief.  See United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004).  A judge
6  may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and
7  the record of prior proceedings that the moving party is not entitled to relief."  Rule 4(b), Section
8  2255 Rules.

9      B.  Ineffective Assistance of Counsel

10          James brings this § 2255 Petition on the basis of ineffective assistance of counsel.  (Dkt.
11  Nos. 1 at 4-5, 83 at 83 at 12, 18, 21.)
12          "The benchmark for judging any claim of ineffectiveness must be whether counsel's
13  conduct so undermined the proper functioning of the adversarial process that the trial cannot be
14  relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 685 (1984).
15  Such a claim must prove two independent components: (1) inadequate performance by counsel,
16  and (2) prejudice resulting from the inadequate performance. To prevail on the first point, a
17  defendant must show "in light of all the circumstances, the identified acts or omissions were
18  outside the wide range of professionally competent assistance."  Id. at 690.  However, "judicial
19  scrutiny of counsel's performance 'must be highly deferential.'"  Richter v. Hickman, 521 F.3d
20  1222, 1229 (9th Cir. 2008) quoting Strickland, 466 U.S. at 689.  Counsel's performance must be
21  "objectively unreasonable" to prove ineffective assistance.  Id.
22      To prevail on the second point, the defendant must show "there is a reasonable probability
23  that, but for counsel's unprofessional errors, the result of the proceeding would have been
24

different." Id. at 694. The assessment of prejudice "should not depend on the idiosyncrasies of the particular decision maker, such as unusual propensities towards harshness or leniency." Id. at 695. The prejudice must have been fundamental enough to "undermine confidence in the outcome." Id. at 694.

1. Voir Dire

James argues he was denied effective assistance of counsel because his attorney failed to object to the government's colloquy during voir dire regarding Sammy "The Bull" Gravano. (Dkt. No. 83 at 12.) Because the prosecutor's comments amounted to prosecutorial misconduct, he argues the failure to object was highly prejudicial. (Id. at 13.)

James has shown his counsel's performance was deficient. The conduct of voir dire "will in most instances involve the exercise of a judgment which should be left to competent defense counsel." Gustave v. United States, 627 F.2d 901, 906 (9th Cir .1980). The Court is cognizant of the "wide latitude counsel must have in making tactical decisions," and is mindful that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. When the prosecutor introduced the topic of cooperating witnesses and Sammy "The Bull" Gravano, James's counsel, Mr. Bentley, immediately objected to the colloquy.[2] (ER 15.) The trial court overruled the objection, noting the prosecutor was "setting up a question for the jury." (Id.) But the lack of a continued objection when the prosecutor introduced the details of Gravano's plea deal (receiving a five year prison sentence despite having killed 17 people) and

---

[2] The Ninth Circuit opinion on his direct appeal noted, "because no objection was made during voir dire, plain error review applies." James, 494 Fed. Appx. At 747. This Court's review of the record, however, shows an initial objection by James's counsel on ER_15.

1 | asking jurors how they felt if a cooperating witness was used to target the person who gave the
2 | order for murder, has no tactical rationale or trial strategy.  Contra Hovey v. Ayers, 458 F.3d 892
3 | (9th Cir. 2006) (no ineffective assistance of counsel when defense counsel chose limited
4 | participation in voir dire to not remind jurors of pretrial publicity).  The Court finds the defense
5 | counsel's performance during voir dire fell below an objective standard of reasonableness.
6 |      Yet, James fails to show that but for this deficient performance the result of the
7 | proceeding would have been different.  The prosecutor did not analogize Gravano's cooperation
8 | with James's case nor did she vouch for the credibility of the cooperators.  ER _15-18.  Nor
9 | would jurors likely found any comparison between the circumstances described by the
10 | prosecutor—plea deals for murderers—and this case.  The evidence at James's trial centered on
11 | drug smuggling, not violent crime.  And, James's counsel extensively questioned the cooperating
12 | witnesses about the nature of the crimes the government charged them with and their plea deals.
13 | ER 191-92, 204, SER 37, 49.  The Court finds the dissimilarities between the colloquy and the
14 | evidence presented at trial make it highly unlikely the jury allowed the prosecutor's questioning
15 | at voir dire to taint their evaluation of the charges against James.
16 |      Finally, the hypothetical and irrelevant nature of the prosecutor's comments during voir
17 | dire distinguish this case from those relied on by Petitioner.  In the cases cited by Petitioner, the
18 | prosecutors during closing urged the juries to convict for improper reasons – such as alleviating
19 | social problems or making the community safer.  See e.g. United States v. Weatherspoon, 410
20 | F.3d 1142 (9th Cir. 2005) (during closing statement's the prosecutor urged the jury to convict
21 | because "convicting Mr. Weatherspoon is gonna make you comfortable knowing there's not
22 | convicted felons on the street…"); United States v. Macias, 32 F. App'x (9th Cir. 2002)(urging
23 | conviction in drug case during closing because "we are not going to let people come and sell this
24 |

crap to our kids or to anybody); <u>Baldwin v. Adams</u>, 899 F. Supp. 2d 889 (N.D. Cal. 2012)(defense counsel ineffective for not objecting to prosecutors' closing statement, which urged conviction to protect community by deterring future law-breaking and preserving civil order).

Under these facts, the Court holds James did not suffer prejudice from his counsel's failure to object to the prosecutor's voir dire. The Court DENIES this claimed error, finding James has failed to establish the second <u>Strickland</u> prong of prejudice.

2. Telephone Call

Next James argues his counsel was ineffective for not moving to suppress the recording of the telephone call between James and Farah. (Dkt. No. 83 at 18.) He argues the use of the phone call constitutes a warrantless search in violation of the Fourth Amendment. (<u>Id.</u>) James acknowledges the Bureau of Prisons had the authority to record the call, but argues the prosecutors needed a warrant to access such calls. The Court disagrees.

It is well settled that a person does not have expectation of privacy and no warrant is required if one party consents to the recording. 18 U.S.C. §2511(2)(c). Title 18, United States Code provides:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. §2511(2)(c). The Ninth Circuit in <u>United States v. Shryock</u>, 342 F.3d 948, 977–78 (9th Cir. 2003), applied section 2511 to find defendants had no expectation of privacy and the government was not required to obtain a warrant when a cooperator consented to the recording. Where one party consents, the recording may be admissible against the other party at trial. <u>Id.</u> at 978.

1    Here, like in <u>Shryock</u>, Farah consented to the recording by signing an acknowledgment
2    that her calls would be monitored. SER_177-179. And she took that monitoring seriously,
3    telling James in response to a question about the drugs, "[d]on't say anything over the phone."
4    (Dkt. No. 83-1 at 3.) <u>U.S. v. Van Poyck</u>, 77 F.3d 285, 292 (9th Cir. 1996) (Consent may be
5    express or may be implied in fact from "surrounding circumstances indicating that the
6    [defendant] knowingly agreed to the surveillance.") The Court finds that Farah consented to the
7    recording and thus the James had no continuing expectation of privacy in it. The recording was
8    admissible at trial, making a motion to suppress without legal authority.

9    The Court does not find that the government required to obtain a warrant before
10   accessing the recording. James's comparison between the government's conduct in this case and
11   the requirement that federal agencies apply to access tax returns filed with the Internal Revenue
12   Service ("IRS") is not apt. Tax returns retain their confidentiality even after filed with the IRS
13   and Congress has chosen to require that other federal agencies must apply (but not obtain a
14   warrant) before the IRS may share them. 26 U.S.C. § 6103(a)-(i)(1)(B). No such legal or
15   procedural requirement exists for the Department of Justice to access telephone recordings of
16   inmates at the Bureau of Prisons. <u>United States v. Santiago</u>, 46 F.3d 885, 894 (9th Cir. 1995).

17   James's fails to establish the first prong of the <u>Strickland</u> test because his counsel's
18   performance was not deficient when he did not pursue a motion to suppress. The recording was
19   legally admissible. The Court DENIES this claimed error.

20   //
21   //
22   //
23   //
24

1    3.  Trial Testimony

2    James also claims his counsel incorrectly advised him that the government could impeach him with a 1999 conviction for soliciting a juvenile prostitute in Canada if James testified.[3] (Dkt. 83 at 21.) Based on Federal Rule of Evidence 609(b), he argues the juvenile conviction was inadmissible because it was more than ten years old and not probative of the drug offenses charged. (Dkt. No. 93 at 3.) By incorrectly advising him, James claims his counsel's performance was deficient. (Id.)

   a)  Statute of Limitations

The government argues James waived this claimed error by failing to raise it within 28 U.S.C. §2255's one-year statute of limitations. (Dkt. No. 90 at 2.) James's conviction became final on December 11, 2012. While James filed seven Petitions between September 2012 and December 2013, he did not file the amended petition raising the impeachment issue until March 25, 2014. (Id. at 3.) The government argues the late filing waives the claimed error. (Id.) The Court disagrees.

In the Ninth Circuit, the one-year statute of limitations for filing a habeas petition may be equitably tolled if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997) (internal quotation marks and citation omitted), overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc). It is James's burden to demonstrate that extraordinary circumstances exist. United States v. Marolf, 173 F.3d 1213, 1218 n. 3 (9th Cir. 1999). "In spite of the high hurdle to the

---

[3] Although James initially represented this conviction as a juvenile offense and therefore inadmissible under Fed. R. Evid. 609(d), he concedes in reply that it was an adult conviction for soliciting a juvenile prostitute. (Dkt. 93 at 3.)

application of equitable tolling, we [the Ninth Circuit] have found equitable tolling of AEDPA's statute of limitations appropriate in a number of circumstances." Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (internal citation and quotation marks omitted).

James has carried his burden of proving extraordinary circumstances outside of his control made it impossible for him to timely file his amended § 2255 Petition. In particular, the Court finds James's ability to timely raise the issue impeded by the Court's consideration of his motion for appointment of counsel, delays in finding appropriate counsel, and counsel's ability to investigate the case. (Dkt. Nos. 64, 65, 70.) Recognizing these issues, the Court twice extended the deadline for James to file an amended habeas petition. (Dkt. Nos. 75, 81.) The Court finds James could not have been expected to amend his petition by December 12, 2013, when the Court had appointed counsel and abstained from ruling on the merits of the Petition until that counsel had filed an amended Petition on James's behalf. The Court finds equitable tolling especially appropriate here when James has diligently pursued his claims. (Dkt. Nos. 1, 5, 9, 12, 13, 38, 53.)

      b) <u>Evidentiary hearing</u>

James seeks an evidentiary hearing only on this last claimed error. He suggests "trial counsel should be examined to determine what advice he recalls having given Petitioner and what the basis for his advice was." (Dkt. No. 93 at 7.) Ninth Circuit law does not require an evidentiary hearing on a motion to vacate under § 2255 if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Moore, 921 F.2d 207, 211 (9th Cir. 1990). Generally, an evidentiary hearing is required if the motion is based on matters outside the record or events outside the courtroom. United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989). However, "[m]erely conclusory statements in a § 2255

1  motion are not enough to require a hearing." United States v. Johnson, 988 F.2d 941, 945 (9th
2  Cir. 1993). Because the parties' memoranda and the records of the underlying criminal
3  conviction conclusively show that Petitioner is not entitled to the relief he seeks, the Court finds
4  that an evidentiary hearing is not necessary. Moore, 921 F.2d at 211.
5        c) <u>James is not entitled to relief on the merits</u>
6      The thrust of James's argument is that his counsel wrongly advised him that the
7  government could impeach him with the 1999 soliciting a juvenile prostitute conviction. (Dkt.
8  No. 93 at 3.) He claims Fed. R. Ev. 609(b) limits the admissibility of convictions more than ten
9  years old to two circumstances: 1) where its "probative value, supported by specific facts and
10 circumstances, substantially outweighs its prejudicial effect;" and (2) the adverse party gives
11 written notice of its intent to use it so that the party has a fair opportunity to contest its use. Fed.
12 R. Ev. 609(b).
13     Even if the Court assumes James's trial counsel advised him that testifying would open
14 the door to the government cross-examining him on the prostitution conviction, the Court does
15 not find James was deprived of effective assistance of counsel. In support of his Petition, James
16 states "Had Mr. Bentley allowed me to take the stand, I could have testified to the following: I
17 am a law abiding citizen of America that has never been in trouble as an adult." (Dkt. No. 83-1
18 at 21.) Assuming James would have testified to his law abiding behavior, the government could
19 have still cross-examined James as to his prior adult criminal convictions, including the one for
20 soliciting a juvenile prostitute. Michelson v. United States, 335 U.S. 469, 482 (1948). Because
21 the potential for impeachment, the Court concludes James has failed to meet the first prong of
22 the Strickland test and has been unable to show prejudice, given that James's testimony would
23 have opened the door to cross-examination on the prostitution conviction.
24

**Conclusion**

James has failed to show he is entitled to relief under section 2255 under an ineffective assistance of counsel theory. James has not shown deficient performance as to his first claim, his counsel's failure to suppress telephone recordings from the FDC. As to the other two claims, James has not established a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Clerk is ordered to provide copies of this order to all counsel.

Dated this 9th day of September, 2014.

Marsha J. Pechman
Chief United States District Judge